*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

*In re* A. BERGREN, Minor.

UNPUBLISHED
June 3, 2021

No. 354767
Tuscola Circuit Court
Family Division
LC No. 19-011444-NA

Before: BECKERING, P.J., and FORT HOOD and RIORDAN, JJ.

PER CURIAM.

Respondent-father appeals as of right the trial court's order terminating his parental rights to his daughter, AB, pursuant to MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (g), and (j). Because we conclude that the trial court erred when it ruled that the Department of Health and Human Services was not required to provide services to respondent, we reverse the termination order and remand the matter for further proceedings.

## I. FACTUAL BACK GROUND

Respondent, a single father of AB, married S. Johnson, a divorced mother of four children, in 2014. The blended family resided together until a divorce in January 2018. At that time, respondent and AB moved out of Johnson's home and into an apartment. In approximately August 2018, respondent and Johnson reconciled and, as a consequence, respondent and AB resumed living in the family home. At that time, Johnson's son, LJ, had elected to attend school in his mother's community; consequently, he too was living full-time in the home.

In January 2019, AB disclosed to her best friend's mother and occasional babysitter that sexual activity had been occurring between her and LJ. At the time, AB was 11 years old and LJ was 13. On January 26, 2019, the babysitter contacted respondent to inform him of AB's disclosures. Children's Protective Services ("CPS") began an investigation on January 28, 2019, and a criminal investigation similarly ensued. After AB's forensic interview in February 2019, petitioner, the Department of Health and Human Services ("DHHS"), filed a petition seeking termination of respondent's parental rights at the initial dispositional hearing.

The court found grounds to assume jurisdiction of AB at the conclusion of the adjudication trial in August 2019 and, after several adjournments, including a delay precipitated by the COVID-

19 pandemic, the court held the initial dispositional hearing in July 2020. At the conclusion of this hearing, the court terminated respondent's parental rights under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (g), and (j). Thereafter, this appeal ensued.

## II. ANALYSIS

Respondent first contends that the trial court erred by terminating his parental rights because petitioner failed to make reasonable efforts to reunite him with his daughter. We agree.

This Court reviews for clear error a trial court's finding that "reasonable efforts were made to preserve and reunify the family." *In re Fried*, 266 Mich App 535, 542-543; 702 NW2d 192 (2005). "A finding is clearly erroneous if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re Rood*, 483 Mich 73, 91; 763 NW2d 587 (2009) (quotation marks, citation, and brackets omitted). The interpretation and application of a statute is a question of law, which we review de novo. *Book-Gilbert v Greenleaf*, 302 Mich App 538, 541; 840 NW2d 743 (2013). "When a court incorrectly chooses, interprets, or applies the law, it commits legal error that the appellate court is bound to correct" *Fletcher v Fletcher*, 447 Mich 871, 881; 526 NW2d 889 (1994).

In *In re Hicks*, 315 Mich App 251, 264; 890 NW2d 696 (2016), aff'd in part, vacated in part on other grounds sub nom, *In re Hicks/Brown*, 500 Mich 79; 893 NW2d 637 (2017), this Court explained:

> Parents have a "fundamental liberty interest . . . in the care, custody, and management of their child[ren]," a right that "does not evaporate simply because they have not been model parents." *Santosky v. Kramer*, 455 US 745, 753, 102 S Ct 1388, 71 L Ed 2d 599 (1982). In Michigan, a court may terminate a person's parental rights when clear and convincing evidence supports at least one ground elucidated in MCL 712A.19b(3). Before the court may consider termination, however, the DHHS must exert "reasonable efforts" to maintain the child in his or her parents' care, MCL 712A.18f(1) and (4), and make "reasonable efforts to reunite the child and family," MCL 712A.19a(2). . . . The need to make "reasonable efforts" stems from federal law. Pursuant to 45 CFR 1356.21(b) (2015), to remain eligible for foster-care maintenance payments under Title IV–E, state agencies "must make reasonable efforts to maintain the family unit."

"The adequacy of the [DHHS]'s efforts to provide services may bear on whether there is sufficient evidence to terminate a parent's rights." *In re Rood*, 483 Mich at 89.

According to MCL 712A.19a(2), reasonable efforts to reunify a child with his or her family must be made in all cases except where, among other things, "[t]here is a judicial determination that the parent has subjected the child to aggravated circumstances as provided in section 18(1) and (2) of the child protection law, 1975 PA 238, MCL 722.638." MCL 722.638(1) requires DHHS to submit a petition for the court's authorization if the child has suffered or is at risk of suffering one or more of certain types of aggravated abuse. MCL 722.638(1) states in relevant part:

(1) The department shall submit a petition for authorization by the court under section 2(b) of chapter XIIA of 1939 PA 288, MCL 712A.2, if 1 or more of the following apply:

(a) The department determines that a parent, guardian, or custodian, or a person who is 18 years of age or older and who resides for any length of time in the child's home, has abused the child or a sibling of the child and the abuse included 1 or more of the following:

\* \* \*

*(ii)* Criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate. . . .

Under MCL 722.638(2), when a petition is submitted as required by subsection (1)

if a parent is a suspected perpetrator or is suspected of placing the child at an unreasonable risk of harm due to the parent's failure to take reasonable steps to intervene to eliminate that risk, the department shall include a request for termination of parental rights at the initial dispositional hearing as authorized under section 19b of chapter XIIA of 1939 PA 288, MCL 712A.19b.

Quoting MCL 712A.19a(2), the Michigan Supreme Court has stated on more than one occasion that " '[r]easonable efforts to reunify the child and family must be made in *all* cases' except those involving aggravated circumstances . . .." *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010); see also *In re Hicks*, 500 Mich at 85 ("[u]nder Michigan's Probate Code, the Department has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental right."); *In re Rood*, 483 Mich at 99-100 (opinion by CORRIGAN, J.) ("Under MCL 712A.19a(2), [r]easonable efforts to reunify the child and family must be made in all cases" except those involving aggravated circumstances not present here.") (quotation marks omitted; brackets in the original). Likewise, this Court has recently reiterated that "[r]easonable efforts to reunify the child and family must be made in all cases except those involving aggravated circumstances under MCL 712A.19a(2)." *In re Rippy*, 330 Mich App 350, 355; 948 NW2d 131, 133 (2019).

The issue of reasonable efforts first arose in the present case when Johnson moved to peremptorily deny termination of parental rights. Johnson argued that, as to her four children, there were no aggravating circumstances, and therefore, reasonable efforts were required and she was entitled to a service plan. The trial court agreed, noting that her's was not an abuse case, but rather a neglect matter. Therefore, the court granted Johnson's motion, stating in its order: "The Court finds that this case does not involve "aggravated circumstances" pursuant to MCL 712A.19a(2)(a) and MCL 722.638(1). Therefore "reasonable efforts" must be made pursuant to MCL 712A.19a(2)."

Shortly thereafter, respondent reproduced Johnson's motion and brought the same issue to the court for consideration on his behalf. In response, DHHS argued that because there existed aggravated circumstances, reasonable efforts were not required. DHHS argued, essentially, that respondent knew his daughter had been abused and he returned her to a home where that abuse

occurred, and, thereafter, he allowed the sexual abuse to continue. The court concluded that as to respondent's case, reasonable efforts were not required. After noting that it was required to consider each child and each parent individually, the court reasoned that under MCL 722.638(2), it could consider a request for termination at the initial dispositional hearing and, by implication, not require that reasonable efforts be pursued. The court stated:

> Specifically as it was placed within the petition, and the Court now having jurisdiction regarding [AB], while [respondent's] restoration [sic, representation?] of the statute, specifically in regard to the MCL 7. – 722.638 is correct for the first part of the statute; there is that second part of the statute and you true – correct and on point, Mr. Burgess [the child's legal guardian ad litem], and that is placing a child in an unreasonable risk of harm could then allow the Court, pursuant to that statute, under aggravated circumstances to go ahead and schedule a termination trial at the time of the initial disposition. Court is very much aware of the fact of the case of [*In re Mason*] in this matter. As it relates to what is required to reunify children and a family.

> But at this point in time pursuant to the remainder of that statute this Court determines that termination can occur at the initial disposition if that is the request of the Department of Health and Human Services.

Thus, the trial court concluded that, even though the facts of this case do not constitute "aggravated circumstances" for purposes of MCL 722.638(1), MCL 722.638(2) authorizes the court's determination that reasonable efforts to reunify respondent with his child were not required in this case because respondent had put the child at risk. In so doing, the trial court committed clear legal error. See *Fletcher*, 447 Mich at 881.

MCL 722.638(2) requires a two-part analysis. It requires DHHS to include a request for termination of parental rights at the initial disposition if (1) the parent is the perpetrator or if the parent placed the child at an unreasonable risk of harm *and* (2) the filing of the petition is mandatory under MCL 722.638(1). The court did not appear to consider both factors but, instead, only focused on respondent's role in exposing his daughter to an unreasonable risk of harm. However, according to the plain language of the statute, a petition mandated by subsection (1) is necessary in order to trigger subsection (2). Yet, the trial court acknowledged, correctly, that the facts do not bring this case within the ambit of MCL 722.638(1).

As indicated above, MCL 722.638(1) requires DHHS to file a petition for authorization under MCL 712A.2 where there are any of several aggravating circumstances. In light of the facts in this case, the most relevant circumstance is MCL 722.638(1)(a)(*ii*): "Criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate." None of the other aggravating circumstances listed by MCL 722.638(a) are at issue, nor is there any evidence that respondent's parental rights to another child have been terminated, voluntarily or involuntarily, MCL 722.638(b). However, for criminal sexual conduct involving penetration to constitute an aggravating circumstance under MCL 722.638(1), the perpetrator must be "a parent, guardian, or custodian, or person who is 18 years of age or older and who resides for any length of time in the child's home . . . ." Where, as here, the perpetrator was less than 18 years old and is neither a parent, guardian, or custodian of the child, the conduct at issue is not an "aggravated circumstance"

for purposes of MCL 722.638(1).  Because a petition was not mandated under subsection (1) of MCL 722.638, subsection (2) does not apply.  Accordingly, the trial court's reliance on MCL 722.638(2) as authority to support its ruling that DHHS did not have to make reasonable reunification efforts was clearly erroneous.[1]

The trial court terminated respondent's parental rights pursuant to MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (g), and (j), which permit termination of parental rights under the following circumstances:

> (b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:
>
> (*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.
>
> (*ii*) The parent who had the opportunity to prevent the physical injury or physical or sexual abuse failed to do so and the court finds that there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home.
>
> * * *
>
> (g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable

---

[1] We acknowledge that some decisions from this Court have indicated that DHHS is not required to provide reunification services where termination is the agency's goal.  See, e.g., *In re Moss*, 301 Mich App 76, 91; 836 NW2d 182 (2013); *In re HRC*, 286 Mich App 444, 463; 781 NW2d 105 (2009).  However, both *Moss* and *HRC*, involved aggravated circumstances.  *HRC* explicitly entailed aggravated circumstances under MCL 722.638(1)(a)(*ii*), and *Moss* entailed a respondent who attempted to suffocate her youngest daughter, conduct arguably falling under MCL 722.638(1)(a)(*vi*).  To the extent that these cases stand for the proposition that

> reasonable efforts at reunification are not required in cases other than those with aggravated circumstances set forth in MCL 712A.19a(2), it runs afoul of our Supreme Court's explicit statements to the contrary in *In re Mason,* 486 Mich at 152; 782 NW2d 747, *In re Rood*, 483 Mich at 99-100; 763 NW2d 587, and *In re Hicks*, 500 Mich at 85 & n 4; 893 NW2d 637. We are bound by Supreme Court precedent.  *In re Nestorovski Estate*, 283 Mich App 177, 206; 769 NW2d 720 (2009) (SAAD, C.J., dissenting) ("Michigan Supreme Court precedent that is binding on this Court does not permit an inferior court, appellate or trial, to overrule Supreme Court precedent[.]").  [*Rippy*, 330 Mich App at 371 (BECKERING, J., dissenting).]

expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

Each of these provisions requires a showing that the minor child, in some manner, would be at risk of future abuse or neglect if returned to the parent's care. In its written opinion following the termination hearing, the trial court opined that it did not believe that respondent "fully understands what is necessary to protect AB from any further abuse," referred more than once to respondent's "head in the sand" attitude, and echoed the concern of AB's therapist about respondent's obliviousness to AB's over-sexualized behavior,[2] and that returning her to respondent would cause a regression in her sense of security. On the basis of respondent's past conduct, the court concluded that, for purposes of MCL 712A.19b(3)(b)(*i*) and (*ii*) and (3)(j), there was a reasonable likelihood that AB would suffer harm or abuse if returned to respondent. As to § 19b(3)(g), the court found that respondent could provide financially for AB, but concluded that his past conduct established that he could not provide proper care and custody for her.

However, as already explained, respondent was entitled to reunification services, and DHHS had a duty to provide them.[3] Without providing respondent reunification services, and

---

[2] Between September 2019 and January 2020, AB's therapist, Karshibia Davidson, observed five visits between respondent and AB. Davidson testified at the termination hearing that she was concerned with respondent's conduct during the visits. AB exhibited sexualized behavior with respondent. She sat suggestively with her legs openly toward respondent. While looking at respondent, AB also put her hand under her shirt and touched her breasts throughout the visits. This was not normal behavior for a girl AB's age, but it was normal for a sexual abuse victim. Respondent failed to acknowledge or redirect AB's behavior and it did not seem to bother him. There was no change in facial expression and he did not engage in any body movement. Davidson was concerned about respondent's ability to model appropriate behavior and help AB continue to implement coping strategies and maintain appropriate boundaries. She did not think he was able to do so. As a result, Davidson was concerned about AB's safety going forward and the risk of future trauma. Respondent testified that he thought AB adjusted her bra a few times, and that when she did, he looked away so as not to embarrass her. He said that if AB had actually been groping her breast he would have said something.

[3] Foster care worker Ashley Kingman testified that, on multiple occasions, the department offered respondent services, but he consistently refused, stating that he did not think he needed services. However, whatever services were offered can hardly be considered reunification efforts, given that the department's goal was always termination, and Kingman testified that services were offered, not with the intent to reunify respondent and his daughter, but because "the Department does not decide whether termination occurs."

assessing his participation in and benefit from such services, concluding that AB will suffer abuse or harm or improper care is little more than speculation arising from respondent's prior conduct. In other words, the inadequacy of DHHS's efforts to provide reunification services renders the evidence insufficient to establish the statutory grounds to terminate respondent's parental rights. See *In re Rood*, 483 Mich at 89.

In conclusion, the trial court correctly concluded that this case does not involve aggravated circumstances. However, the court committed clear legal error by concluding that, even absent aggravated circumstances, MCL 722.638(2) relieved DHHS of its duty of making reasonable efforts at reunification. Without proving respondent with a meaningful opportunity to engage in services designed to remove the barriers to reunification with his daughter, there is a "hole in the record," *In re Mason*, 486 Mich at 142, that renders the evidence insufficient to terminate respondent's parental rights, see *In re Rood*, 483 Mich at 89. Accordingly, we reverse the trial court's order terminating respondent's parental rights and remand this matter for further proceedings consistent with this opinion.[4]

Reversed and remanded. We do not retain jurisdiction.

/s/ Jane M. Beckering
/s/ Karen M. Fort Hood
/s/ Michael J. Riordan

---

[4] Respondent also challenged the trial court's findings and conclusions with regard to the statutory grounds for termination and that termination was in the child's best interests. We need not address these issues further, given our disposition of respondent's challenge to petitioner's failure to make reasonable efforts at reunification.